## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PHILICIA R. MOHLER,                      )<br>                                                        )<br>        Plaintiff,                             )<br>                                                        )<br>Vs.                                                  )<br>                                                        )<br>SHERIFF OF CARTER COUNTY,   )<br>OKLAHOMA, in his official capacity, )<br>                                                        )<br>        Defendant.                          ) | Case No.:  19-cv-370-SPS<br>JURY TRIAL DEMANDED<br>ATTORNEY'S LIEN CLAIMED |

## COMPLAINT

**COMES NOW** the Plaintiff, Phylicia R. Mohler ("Plaintiff"),[1] by and through her attorneys of record, and for her causes of action against the Defendant, alleges and states as follows:

### INTRODUCTORY STATEMENT

1. On June 1, 2016, Plaintiff was picked up at the Oklahoma County Jail by Carter County Sheriff's Office ("CCSO") Deputy Geary Williamson to be transported to the Carter County Jail ("Jail").

2. Deputy Williamson, a male, was not escorted by a female officer, but instead was sent alone to transport Plaintiff, a female.

3. Deputy Williamson informed Plaintiff that he had specifically requested the assignment so that he could be alone with her.

---

[1]      Plaintiff has refiled this case pursuant to Oklahoma's "savings statute." *See* 12 Okla. Stat. § 100; *Eastom v. City of Tulsa*, 783 F.3d 1181, 1184 (10th Cir. 2015) (holding that Oklahoma's "savings statute" applies to claims filed under 42 U.S.C. § 1983). The original action was timely filed on May 30, 2018. *See* 18-CV-170-SPS (E.D. Okla.), at Docs. 1 & 2. That action was dismissed, pursuant to a Joint Stipulation of Dismissal Without Prejudice, on November 1, 2018. *See* 18-CV-170-SPS (E.D. Okla.), at Doc. 12.

4. Deputy Williamson then drove Plaintiff to a rural area, pulled off the road and parked so as to not be seen from the road.

5. At this point, tucked away in his CCSO patrol car, Deputy Williamson sexually assaulted Plaintiff.

6. When he finished assaulting her, Deputy Williamson placed Plaintiff in handcuffs and delivered her to the Jail.

7. As a Deputy Sheriff, it was Williamson's duty to protect Plaintiffs from harm. However, rather than protect her, Williamson preyed on her.

8. Deputy Williamson had previously groomed Plaintiff as a victim by promising legal assistance and lenient treatment in exchange for sexual contact. This occurred while Plaintiff was held in the Jail in the fall of 2015. During this time, Deputy Williamson would remove her from her cell and take her to an area of the Jail that was not monitored by video cameras. There he would make unwanted sexual advances.

9. Knowing the "blind spots" within the Jail where his actions would be unmonitored and knowing of the pervasive lack of discipline by superiors, Williamson had total control over Plaintiff. In an utter betrayal of public trust and duty, Williamson exploited his position of power to gradually and continually groom his victim.

10. Defendant disregarded the known and obvious risk that harm could result to Plaintiff and other women in CCSO custody if left alone and unsupervised with male Deputies both in the Jail and during transport. Defendant failed to provide Plaintiff with adequate supervision and security in order to protect her and other women in the custody of CCSO from the obvious and known risk of suffering serious physical harm, including sexual assault.

11. The sexual assault upon Plaintiff was eminently preventable and was the result of policies practices and customs of CCSO during Sheriff Anthony Milton's time as Carter County Sheriff, and was consistent with an overwhelming culture at CCSO of misogyny, sexual degradation, and hostility towards women, including, but not limited to, women in the custody of CCSO.

## JURISDICTION AND VENUE

12. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1343 to secure protection of and to redress deprivations of rights secured by the Fourth and/or Fourteenth Amendment(s) to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

13. The jurisdiction of this Court is also invoked under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Fourth and/or Fourteenth Amendment(s) to the United States Constitution and 42 U.S.C. § 1983.

14. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## PARTIES

15. Plaintiff re-alleges and incorporates by reference each paragraph of this Complaint, as though fully set forth herein.

16. Plaintiff is a resident of Creek County, Oklahoma. At all times relevant hereto, Plaintiff was in CCSO custody.

17. Defendant ("Defendant" or "CCSO") is the Sheriff of Carter County, Oklahoma, residing in Carter County, Oklahoma, and was, at all times relevant hereto, acting under color of

law. Defendant, as Sheriff and the head of CCSO, is, and was at all times relevant hereto, responsible for ensuring the safety and well-being of women in CCSO custody. The Carter County Sheriff is sued purely in his official capacity. It is well-established, as a matter of Tenth Circuit authority, that a § 1983 claim against a county sheriff in his official capacity "is the same as bringing a suit against the county." *Martinez v. Beggs,* 563 F.3d 1082, 1091 (10th Cir. 2009). *See also Porro v. Barnes,* 624 F.3d 1322, 1328 (10th Cir. 2010); *Bame v. Iron Cnty.,* 566 F. App'x 731, 737 (10th Cir. 2014). Thus, in suing the Carter County Sheriff in his official capacity, Plaintiff has brought suit against the County/CCSO. Carter County/CCSO is ultimately responsible for the well-being, including the health and safety of individuals in CCSO custody. As Carter County Sheriff, Defendant is, and was at all times pertinent hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of CCSO, including the policies, practices, procedures, and/or customs that were the driving force behind the violation of Plaintiff's rights as set forth in this Complaint.

## FACTUAL ALLEGATIONS

18. Plaintiff re-alleges and incorporates by reference each paragraph of this Complaint, as though fully set forth herein.

### A. The Sexual Assault of Plaintiff by CCSO Deputy Williamson

19. During a term of detainment in the Carter County Jail in the fall of 2015, Carter County Sheriff's Deputy Geary Williamson repeatedly removed Plaintiff from her cell and took her to an area of the jail where no cameras were present.

20. In that area, Carter County Deputy Sheriff Williamson made unwanted sexual advances towards Plaintiff and repeatedly offered Plaintiff a *quid pro quo*: he would provide legal

assistance and lenient treatment in exchange for physical contact of a sexual nature with Plaintiff.

21. Plaintiff was released from the Jail in the winter of 2015/2016.

22. In the spring of 2016, Plaintiff was arrested and taken to the Oklahoma County Jail.

23. Plaintiff was picked up at the Oklahoma County Jail for transport to the Carter County Jail on June 1, 2016, by Carter County Sheriff Deputy Williamson.

24. Carter County Deputy Sheriff Williamson informed Plaintiff that he had specifically requested this duty so that he could be close to the Plaintiff.

25. During Plaintiff's transport from Oklahoma County, Williamson removed Plaintiff's handcuffs and allowed her to sit unrestrained in the front seat. Deputy Williamson also bought lunch for Plaintiff.

26. Deputy Williamson then exited southbound interstate I 35 at the Davis/Sulfur exit. Deputy Williamson then proceeded to drive through the scenic Arbuckle Mountains in order to find a "quiet place" where he could spend time with the Plaintiff.

27. This route was specifically chosen by Deputy Williamson so as to take Plaintiff to a location where there were no other witnesses.

28. Once in a rural area, Deputy Williamson exited the roadway and parked so that his official Carter County Sheriff's patrol car could not be seen from the road.

29. Deputy Williamson then removed Plaintiff's pants and forcibly performed oral sex on her.

30. Deputy Williamson groped and fondled Plaintiff's breasts.

31. Deputy Williamson forced Plaintiff to place her hands on his genitals.

32. In short, Williamson preyed upon Plaintiff's vulnerability and sexually assaulted her.

33. When he was done assaulting her, Deputy Williamson placed Plaintiff in handcuffs and delivered her to the Jail.

34. Deputy Geary Williamson was later charged with 2 felony counts for his violation of Plaintiff in Carter County case number CF-2016-620. Those two counts were identified as Count 1. Rape by Instrumentation and Count 2. Sexual Battery. [2]

35. Deputy Geary Williamson entered a plea of guilty to the charges in CF-2016-620 on May 1, 2017.

36. As a result of the sexual assault, Plaintiff has suffered severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

### B. CCSO's Culture of Indifference and Sexual Depravity

37. At all material times Milton Anthony was the Sheriff of Carter County, Oklahoma.

38. Sheriff Anthony, as Sheriff and head of CCSO at all times relevant hereto, was responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of CCSO and the Jail, including the policies, practices, procedures, and/or customs that violated Plaintiff's rights as set forth in this Complaint. Sheriff Anthony is no longer the Sheriff as he resigned in the process of, and as a condition to, him pleading guilty to bribery charges that were related to a coercive and extortive sexual relationship with a subordinate CCSO employee, described in detail, *infra*.

39. Sheriff Anthony, through his actions and inactions, established policies, practices, and/or customs that fostered an overwhelming culture at CCSO of misogyny, sexual degradation, and hostility towards women, including, but not limited to, women in the custody of CCSO.

---

[2] Recognizing the extraordinary vulnerability of persons who are inmates of a county jail for any reason and the extraordinary opportunities of sheriffs and of employees of sheriffs to prey upon the vulnerability of such persons, the statutes of the State of Oklahoma specifically protect such persons. Under Oklahoma criminal statutes, any state, federal, county, municipal or political subdivision employee who has sexual intercourse with a person under the supervision of a sheriff is guilty of the crimes of rape and sexual battery. See, 21 Okla. Stat. § 1111(A)(7) and 21 O.S. § 1 123 (B)(2).

6

40. Sheriff Anthony further established policies, practices, and/or customs at CCSO that are causally linked to the violation of the civil rights of women in custody, like Plaintiff. These policies, practices, and/or customs include, but are not limited to, a failure to train CCSO employees regarding sexual harassment, failure to train CCSO employees how to treat women in custody, allowing male CCSO officers to be alone with women in custody and failing to supervise those male officers, and a failure to implement and enforce policies related to sexual harassment and sexual inappropriate behavior, and a practice and/or custom of intimidating victims of sexual assault and/or sexual harassment and retaliating against those who reported constitutional violations.

41. Sheriff Anthony himself was a driving force behind CCSO's toxic culture against women. Sheriff Anthony served as Carter County Sheriff from 2013 until he resigned on November 7, 2016. Prior to his resignation, Carter County Sheriff Milton Anthony was charged with two felony counts for his conduct as Sheriff, in Carter County case number CF-2016-366. Those two counts were identified as Count 1. Acceptance of Gratuity or Reward for Appt or Exercise of Office and Count 2. Sexual Battery. Anthony resigned after pleading guilty to a charge of "accepting a gratuity or reward for appointment of official duty". The charges stemmed from Anthony's sexual relationship with former Carter County Deputy, Kelli Denney ("Ms. Denney"). In July of 2015, Ms. Denney confided in Anthony, whom she had known since she was a child and called "Uncle Milty," that she was in significant economic hardship. Anthony, who is nearly 40 years older than Ms. Denney and had known her since she was a newborn baby, immediately exploited this vulnerability. He sent a text message to Ms. Denney that said, "you help me, I help you," and suggested that he would hire Ms. Denny's then-husband, Johnny Denney, as a Carter County Deputy Sheriff if she had sexual relations with him. *See Denney v. Carter County Board of County Commissioners et*

7

*al.,* 18-CV-42-RAW (E.D. OK 2018). Then- Sheriff Anthony had sex with Ms. Denney approximately 50 times, over the course of a year, usually at his home around noon on Fridays. Ms. Denney attempted to end her sexual relationship with Anthony several times, but he "used various tactics to cause [Ms. Denney] to continue the sexual relationship, using both carrot and stick approaches." Anthony threatened to terminate Ms. Denney and/or her husband if she refused to give him sexual favors. On May 20, 2016, Anthony told Ms. Denney, "…I said you scratch my back and I scratch yours, that's what I said…when you stop scratching, then I stop scratching. You see what I'm saying." When Ms. Denney held firm in ending the relationship, Anthony reassigned her to a less desirable position within the Jail. Fearing for her and her husband's jobs, Ms. Denney reported Anthony's behavior to the media and law enforcement. In an act of bitter retribution, Anthony placed Ms. Denney on administrative leave until approximately September 9, 2016. *See Denney v. Carter County Board of County Commissioners et al.,* 18-CV-42-RAW (E.D. OK 2018).

42. During the time that Sheriff Anthony was callously exploiting Ms. Denney, he was also serially sexually harassing other female CCSO employees. Between December 2015 and June 2016, Sheriff Anthony repeatedly sexually harassed former female CCSO employee "C.B." Sheriff Anthony, *inter alia,* groped C.B's breasts on multiple occasions without her consent and made inappropriate sexual remarks to her on a regular basis. When C.B. complained about Anthony's behavior, she was put on administrative leave and ultimately fired.

43. Further, upon information and belief, Sheriff Anthony, in violation of Oklahoma law, had romantic and/or sexual relationships with female felons.

8

44. Sheriff Anthony's misogynistic attitude towards women spread throughout CCSO like a contagious disease. For example, one former CCSO jailer had a well-known history of sexually harassing female CCSO employees and inmates. The former jailer repeatedly asked to see female CCSO employees' breasts, told them to call him when they were "ready to cheat on [their] husbands," and made other sexually charged statements. Both female employees and inmates were afraid to report male CCSO employees' sexually aggressive conduct out of fear of retaliation.

45. Also, on multiple occasions CCSO Deputies watched pornographic films on the computer in the Tower at the Jail. From the Tower, Deputies could watch the female inmates in the Jail. The internet browsing history from the computer in the Tower shows that on multiple occasions, CCSO staff visited pornographic webpages including "Haze Her" and "Rape Videos, Rape Pictures, and Rape Articles;" and performed internet searches for terms such as "RAPE." On information and belief, CCSO was aware of and deliberately turned a blind-eye to this highly alarming and inappropriate behavior by its employees.

46. Further, CCSO also had a practice and/or custom of allowing its male deputies who were working in the Tower have female visitors, particularly during the overnight shift. Upon information and belief, CCSO deputies regularly engaged in sexual acts with women during their shifts, ignoring their duties to supervise the female inmates via the Jail's surveillance system. This practice and/or custom greatly increased the risk of violating the constitutional rights of female inmates.

47. As evidenced by his behavior, Sheriff Anthony utterly failed to train CCSO employees regarding sexual harassment, inappropriate sexual conduct, and inappropriate sexual contact with women in CCSO custody. Upon information and belief, CCSO never trained its employees in the aforementioned areas during Anthony's tenure as Sheriff.

48. Sheriff Anthony's failure to train Carter County Deputy Sheriff Geary Williamson how to treat women in CCSO custody is an example of a policy, practice, and/or custom of CCSO that is affirmatively linked to Deputy Williamson's deliberate indifference to Plaintiff's Constitutional rights and was a proximate cause of the violation of Plaintiff's Constitutional rights and the damages therefrom.

49. Carter County Sheriff Anthony also failed to properly supervise Carter County Deputy Sheriff Geary Williamson while he was in charge of Plaintiff. This policy, custom and usage of the Sheriff of Carter County to fail to properly supervise Carter County Deputy Sheriff Geary Williamson was deliberately indifferent to Plaintiff's Constitutional rights and was a proximate cause of the violation of Plaintiff's Constitutional rights and the damages therefrom.

50. Additionally, CCSO had a policy and/or practice of allowing its male officers to be alone and unsupervised with women in the custody of CCSO, both in the Jail and during transport.

51. Deputy Williamson's conduct as described herein is consistent with CCSO's culture of misogyny, sexual exploitation, and sexual depravity perpetuated by Sheriff Anthony during his tenure as Carter County Sheriff.

52. Williamson utilized his authority and resources bestowed upon him by the Carter County Sheriff's Office to prey upon Plaintiff. Williamson was able to strategically plan, time and commit these heinous crimes because of the persistent lack of discipline among CCSO employees and lack of supervision of both CCSO employees and individuals in CCSO custody.

53. Williamson's manipulation and eventual assault of Plaintiff was facilitated by a total breakdown in supervision and security, within CCSO, including at the Jail and during

transport to/from the Jail, as well as a toxic culture that tacitly condoned such abhorrent behavior.

54. Defendant failed to provide adequate supervision and security for Plaintiff as a woman in CCSO custody.

55. Sheriff Anthony failed to adequately train CCSO personnel, particularly male personnel, concerning the supervision of women in CCSO custody, both in the Jail and during transport, in order to protect these women from inappropriate sexual conduct and activity. This failure to train constitutes deliberate indifference to the health and safety of women in CCSO custody, like Plaintiff.

56. Defendant's deliberate indifference to the clear and present risks to Plaintiff's safety was a direct and proximate cause of her serious injuries and damages.

## CLAIMS FOR RELIEF

### Violation of the Fourth and/or Fourteenth Amendment(s) to the Constitution of the United States (42 U.S.C. § 1983)

57. Plaintiff re-alleges and incorporates by reference each paragraph of this Complaint, as though fully set forth herein.

58. At all times pertinent hereto, Sheriff Anthony and Deputy Williamson were acting under color of state law.

59. Deputy Williamson, by exploiting his position of power and by sexually assaulting Plaintiff, violated Plaintiff's constitutional right to be free of excessive force, right to bodily integrity, and right to be protected from sexual misconduct and assault.

60. Deputy Williamson's conduct as described herein is entirely inconsistent with contemporary standards of decency.

11

61. Deputy Williamson's conduct as described herein was a direct and proximate cause of Plaintiff's injuries and damages, including physical pain, emotional distress, psychological damage, mental anguish, suffering and humiliation.

62. There is an affirmative causal link between the violation of Plaintiff's rights described herein and policies, practices and/or customs which the Sheriff/CCSO promulgated, created, implemented and/or possessed responsibility for.

63. Examples of these policies, practices and customs include:
    a. Failing to provide adequate supervision and/or security to women in CCSO custody;
    b. Failing to adequately train Deputy Williamson, and other CCSO officers and employees;
    c. Failing to adequately supervise and monitor Deputy Williamson, and other CCSO officers, and women in CCSO custody, in, or being transported to/from, the Jail;
    d. Assigning a single male deputy to transport a female arrestee or inmate;
    e. An established culture of misogyny, sexual degradation, and hostility towards women, including, but not limited to, women in the custody of CCSO.

64. CCSO knew or should have known, either through actual or constructive knowledge, or it was obvious, that these policies, practices and/or customs posed substantial risks to the health and safety of women like Plaintiff. Nevertheless, the Sheriff/CCSO failed to take reasonable steps to alleviate those risks, in deliberate indifference to women in CCSO custody's, including the Plaintiff's, health and safety.

65. The Carter County Sheriff/CCSO, through its continued encouragement, ratification, and/or approval of the aforementioned policies, customs, and/or practices, in spite of their

known and obvious inadequacies and dangers, has been deliberately indifferent to women in the custody of CCSO, including the Plaintiff's, health and safety.

66. As a direct and proximate result of the aforementioned policies, customs, and/or practices, Plaintiff suffered injuries and damages as alleged herein.

**WHEREFORE**, based on the foregoing, Plaintiff prays that this Court grant her the relief sought, including, but not limited to, actual damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from date of filing of suit, reasonable attorney fees, and all other relief deemed appropriate by this Court.

### JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by the Complaint.

Respectfully submitted,

**SMOLEN & ROYTMAN**

/s/Daniel E. Smolen
Daniel E. Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Bryon D. Helm, OBA #33003
701 S. Cincinnati Avenue
Tulsa, Oklahoma 74119
(918) 585-2667 P
(918) 585-2669 F

***Attorneys for Plaintiff***